Argued and submitted March 28, reversed, referee's order reinstated May 11, 1983

In the Matter of the Compensation of
Harold W. Davis, Claimant.

DAVIS,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent*

(82-01397; A26319)

662 P2d 803

David A. Dorsey, Coos Bay, argued the cause for petitioner. With him on the brief was Bedingfield, Joelson and Gould, P.C., Coos Bay.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant appeals the Workers' Compensation Board's order reinstating and affirming SAIF's denial of the claim. The Board reversed the referee's order that SAIF accept the claim as nondisabling. We reverse and reinstate the referee's order.

Claimant was employed by the city of Coos Bay. He claimed that he injured his right knee on February 9, 1981, while repacking a pump. The task required him to kneel on a concrete floor for an extended period of time.

He reported the injury to his supervisor on February 10. The supervisor signed and filed an accident report. His co-worker, Green, signed the accident report as a witness. Green testified that he had worked with claimant in February, 1981, and that claimant had mentioned to him that he had injured his knee. On February 13, 1981, claimant went to his physician, Dr. Henke, who had last seen him on January 28, 1981, and had been treating him for several problems. The doctor's medical record for the February 13 visit reads:

> "His other problems at the present time include knee pain. He states that last summer he knelt on a grate. A couple of weeks after that he began to notice pain in the right knee. There is no locking or giving out but it occasionally does snap and swells a little. recently this has been worse. He apparently had some sort of injury in the lateral portion of the knee or upper lateral calf in 1979 which prompted him to lose a couple of weeks of work."

Claimant saw Dr. Henke again on March 13, 1981. The doctor reported with respect to the knee "His only other problem is some intermittent pain in the right knee - see the prior clinic note. For the present he is to continue taking the occasional Motrin for that."

On May 14, 1981, and July 20, 1981, claimant again saw Dr. Henke, but about other problems. The doctor's record does not refer to any knee complaint. On September 28, 1981, he again visited Dr. Henke, who reported:

> "Mr. Davis presents today because of right knee pain. This first started in Feb. of this year after he did some kneeling on a concrete floor. Since then the pain has occurred off an on, seems to be gradually increasing. It is aggravated by walking

and at times when walking he hears a click in the knee. It is also aggravated by driving his car and at times it keeps him awake at night. Knee has not been swelling. At times it does feel a little unstable. It does not lock. Prior injury is denied, although he has had a prior muscle injury in the right calf.

"O - Weight 195 - unchanged. BP 120/80. Right knee is not swollen, and it is not warm. Ligaments are intact. No patellar crepitation is felt.

"LAB: X-ray of the right knee is relatively unremarkable.

"A - Knee pain, probably secondary to prepatellar bursitis or chondromalacia.

"P - Trial of naproxen 250 mg. q.a.m. He is to call back with a progress report with respect to his response to that."

SAIF denied the claim on the ground that the injury was unrelated to claimant's job. Although the referee found the injury compensable, the Board concluded that claimant had failed to carry his burden of proof:

"Claimant had right knee complaints some two weeks prior to the alleged event. Upon examination four days after the alleged injury claimant gave a history to Dr. Henke of injuring the right knee the summer before while kneeling on a grate. Claimant left this employer in August 1981 and really sought no medical treatment for his knee until September 1981 when he was employed by another employer in a job requiring walking and driving.

"Further, there is no medical opinion evidence that claimant's right knee condition arose out of the alleged incident at work on February 9, 1981. * * *"

We do not agree with the Board's statement of facts or its conclusions. Dr. Henke's report of claimant's visit of January 28, 1981, makes no reference to "right knee complaints." The Board also stated that there was no mention of any leg problems on claimant's visit to Dr. Henke on March 13 and that claimant had sought no medical treatment for his knee until September, 1981. Dr. Henke's report is to the contrary. Claimant did seek medical treatment for his knee on both February 13 and March 13, 1981.

Although Dr. Henke's report of February 13 states that claimant told him that he had knelt on a grate the previous summer and a couple of weeks thereafter had noticed

pain in the right knee, the referee could still find the claimant to be credible.[1] His co-worker and supervisor both stated that claimant reported the injury to them promptly and before the visit to Dr. Henke occurred. Claimant's co-worker Green testified that he had also suffered pain in his knees when he knelt at work.

The referee concluded that the injury was a result of a specific incident that occurred on February 9, 1981. In matters of credibility we defer to the judgment of the referee who heard the testimony of claimant, his co-worker and his supervisor. *See Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 487 P2d 931 (1970), *rev den* (1971). We find that the record supports the referee's finding that claimant's nondisabling injury arose out of the incident at work on February 9, 1981. Medical opinion evidence of causation is not necessary for this uncomplicated claim. *Uris v. Compensation Department,* 247 Or 420, 427 P2d 753, 430 P2d 861 (1967).

Reversed; the referee's order is reinstated.

---

[1] At the hearing claimant was asked about the injuries to his knee in the summer of 1980 and February, 1981:

"Q. The doctor mentions, I think he says, you described your hurt in your knee as being a strain in your knee from bending over a grate last summer. What was that about?

"A. We wanted a particular sample for some reason, I can't remember the reason for getting the sample, but it would require going on a metal catwalk there. The sample I wanted to get was underneath it, so we had a short pull with a container on it and I knelt down on the steel grating and picked the sample and stood back up, again, and that's what happened. It stayed sore for just a little while, and then I forgot about it.

"Q. How long did that take? Did it take a half hour or just a couple of seconds?

"A. Oh, just a few seconds.

"Q. Do you recall mentioning that business with the grate to the doctor?

"A. I can't recall it, now.

"Q. Do you recall mentioning to the doctor the injury to your knee from kneeling on the concrete just a few days before you went to the doctor?

"A. I can't swear to it, no.

"Q. You were primarily being treated by Dr. Henke at that time for what?

"A. High blood pressure."